**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 0 8 2014

JAMES W. McCORMACK, CLERK
By: _____
                          DEP CLERK

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### LITTLE ROCK DIVISION

**JIMMY LEWIS**                                                    **PLAINTIFF**

**V.**                     CASE NO: 4:14-Cv-717-JMM

**OCWEN LOAN SERVICING, LLC**                          **DEFENDANT**

## COMPLAINT

Comes now the Plaintiff, Jimmy Lewis, by and through his counsel, Leigh Law PLLC., and

for his complaint states:

This case assigned to District Judge Moody
and to Magistrate Judge Volpe

## INTRODUCTION

This action involves the facts and circumstances surrounding the servicing of a home loan

by Defendant Ocwen Loan Servicing, LLC.  Plaintiff seeks actual damages, statutory damages,

punitive damages, treble damages, damages for emotional distress, costs to bring this action, attorney

fees, declaratory judgment that Ocwen's conduct against the Plaintiff is wonton and willful, so that

Ocwen will be on notice that their current course of conduct will continue to subject them to future

damages, including punitive damages; for breach of contract, unjust enrichment, violations of the

*Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§2601, et. seq.,* the *Fair Debt*

*Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et. seq.,* the *Arkansas Fair Debt*

*Collection Practices Act ("AFDCPA"), A.C.A. §§ 17-24-501 et. seq., the Fair Credit Reporting Act*

*("FCRA"), 15 U.S.C. §§ 1681 et. seq.,* and the *Arkansas Deceptive Trade Practices Act ("ADTPA"),*

*A.C.A. §§4-88-101 et. seq.*

## PARTIES

1.     Jimmy Lewis (hereafter "Lewis"), is an individual residing in Union County,

Arkansas.

2.      Ocwen Loan Servicing, LLC (hereafter "Ocwen"), is a limited liability company licensed to do business in the state of Arkansas.

3.      Ocwen, which is a subsidiary of Ocwen Financial Corporation, is a mortgage bank and home mortgage loan servicer, servicing mortgages on behalf of lenders and investors; including pooled mortgage backed securities.

4.      Ocwen maintains its principal place of business at 1661 Washington Road, Suite 100, West Palm Beach, Florida 33409.

5.      Ocwen's registered agent, according to the Arkansas Secretary of State,[1] is the Corporation Company, located at 300 Spring Building, Suite 900, in Little Rock, Arkansas.

6.      The property which is the subject of this litigation is 116 Blazer Road, in Junction City, Arkansas 71749.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to *28 U.S.C. 1332(d)* and venue in this Court is proper pursuant to *28 U.S.C. 1391*.

8.      Defendant does substantial business in this state and within the Eastern District of Arkansas; receives substantial compensation and profits from the servicing of home mortgage loans in this District; and has engaged in unlawful practices in this District, so as to subject itself to personal jurisdiction in this District.

9.      As Plaintiffs' state claims are related to Plaintiff's federal claims, and Plaintiff's state claims are inextricably entwined and arise out of a common nucleus of related facts, forms part of the same controversy under Article III of the United States Constitution, are not complex or novel

_____

[1]Filing number 100213263.

and are straightforward, this Court has supplemental jurisdiction to hear and adjudicate Plaintiff's state claims against the Defendant under *28 U.S.C. 1367.*

10.     Declaratory judgment is available pursuant to *28 U.S.C. 2201*.

## RELEVANT PRECEDENT AND STATUTORY STRUCTURE OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA")

11.     Congress enacted RESPA to effect "significant reforms in the real estate settlement process... to insure that consumers throughout the Nation are provided with greater and timelier information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices." *12 U.S.C. 2601(a).*

12.     Originally, "settlement process" in RESPA included negotiation and execution of mortgage contracts, but in 1990, RESPA was amended to include loan servicing.[2]

13.     Correspondence must meet several statutory requirements in order to be considered a qualified written request (hereinafter "QWR"). Specifically, a QWR is a written request other than a notice on a payment coupon or other payment medium supplied by the servicer.   *12 U.S.C. 2605(e)(1)(B).*   A QWR must request information relating to the servicing of the loan.   *12 U.S.C. 2605(e)(1)(A).*

14.     Under RESPA, "[t]he term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan.......and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *12 U.S.C. 2605(i)(3).*

---

[2] Section 2605 was enacted as an amendment to RESPA in 1990, by the Cranston-Gonzalez National Affordable Housing Act and amended one year later. Pub. L. No. 101-625, 941, 104 Stat. 4079; S. Rep. No. 101-17125(1990)(Conf. Rep.).

15.     Upon receipt of a valid QWR, RESPA requires a loan servicer to undertake an investigation, and make any appropriate corrections to the borrower's account and notify the borrower of such corrections. *12 U.S.C. 2605(e)(2)(A).*

## FACTUAL ALLEGATIONS

16.     Lewis owns the home located at 116 Blazer Road in Junction City, Arkansas 71749.

17.     Ocwen services Plaintiff's loan. Upon information and belief, Ocwen has serviced this loan for three years.

18.     On or about January 23, 2014, Ocwen forwarded to Lewis his Annual Escrow Account Disclosure Statement Account History (hereafter "EDS") *(See, exhibit "A" attached hereto and incorporated by reference).*

19.     Lewis has never before in the three (3) years Ocwen has serviced his home loan received an Annual Escrow Account Disclosure Statement Account History.

20.     Lewis was unaware that Ocwen maintained an escrow account for his mortgage at all, until receipt of the EDS in January 2014.

21.     Upon review of the January 23, 2014 Annual Escrow Account Disclosure Statement Account History, Lewis noticed inaccuracies.

22.     Lewis disputes Ocwen collecting escrow monies for property taxes, which Lewis paid directly to the State of Arkansas.

23.     Lewis disputes Ocwen collecting escrow monies for homeowners' insurance, which Lewis paid directly to Allstate Insurance Company.

24.     The explanation of the EDS reflects $321.46 of Lewis's monthly payment was to be credited to his escrow account every month.

## 2012 DISCREPANCIES

25.     The EDS began with the month of April, 2012, and reflected a negative balance of –
$3,278.36.  Plaintiff does not know why.

26.     The EDS reflected $231.32 was credited to Lewis' escrow account for the months of
May through December 2012.

27.     The EDS reflects Ocwen paid Lewis' 2011 property taxes in the amount of $680.23
in April, 2012.

28.     Lewis paid his 2011 property taxes directly on October 25, 2013; in the amount of
820.29 *(See, exhibit "B" attached hereto and incorporated by reference)*.

29.     The State of Arkansas has no record of Ocwen ever paying the 2011 property taxes.

30.     The EDS reflects an ending balance of negative - $1890.44 for December 2012.

## 2013 DISCREPANCIES

31.     The EDS reflected Lewis's escrow account began in 2013 with a negative balance of
- $1659.12.  Plaintiff does not know why.

32.     The EDS reflects Ocwen paid Lewis' 2012 property taxes in the amount of $680.23
in April, 2013.

33.     Lewis paid his 2012 property taxes directly on October 25, 2013 in the amount of
748.34 *(See, exhibit "B" attached hereto and incorporated by reference)*.

34.     The State of Arkansas has no record of Ocwen paying the 2012 property taxes.

35.     The EDS reflected $231.32 was a credited to Lewis' escrow account for the months
of January through April 2013.

36.     The EDS reflected $321.46 was a credit to Lewis' escrow account for the months of
May through December 2013.

37.     Lewis' payment has never changed; the same amount should have been credited to his account every month.

38.     The EDS reflects Ocwen force placed property insurance in the amount of $1429.00 in January 2013.

39.     The EDS reflects Ocwen force placed property insurance in the amount of $120.00 in November 2013.

40.     Lewis has maintained his homeowners' insurance with Allstate since November 7th, 2013, policy number 995088342.

41.     Prior to November 7th, 2013, Lewis maintained his homeowners' insurance with American Security Insurance.

42.     Lewis was current on his homeowners' insurance in January of 2013, when Ocwen force placed homeowners' insurance on Lewis' account.

43.     The EDS reflects an ending balance of $20.21 for December 2013.

## 2014 DISCREPANCIES

44.     Lewis paid his 2013 property taxes directly on March 17, 2014, in the amount of 657.54 (*See exhibit "C" attached hereto and incorporated by reference*).

## LEWIS' ATTEMPTS AT RESOLUTION

45.     On March 18, 2014, Lewis sent to Ocwen a handwritten request to close his escrow account and included receipts for the previous three years showing Lewis had paid his taxes directly to the State of Arkansas (*See, exhibit "D" attached hereto and incorporated by reference*).

46.     On or about April 6, 2014, Lewis phoned Ocwen to discuss his disputes with his escrow billing.

47.     On or about April 19, 2014, Lewis phoned Ocwen to discuss his disputes with his escrow billing.

48.     On or about May 20, 2014, Lewis phoned Ocwen to discuss his disputes with his escrow billing.

49.     On or about June 20, 2014, Lewis phoned Ocwen to discuss his disputes with his escrow billing.

50.     On or about July 16, 2014, Lewis phoned Ocwen to discuss his disputes with his escrow billing.

51.     On August 24, 2014, Lewis sent to Ocwen, to the address designated on the Ocwen website to receive QWR, a letter outlining his disputes with Ocwen's accounting of Lewis' trust account *(See, exhibit "E" attached hereto and incorporated by reference).*

52.     Ocwen did not acknowledge receipt of the QWR within twenty (20) days of receipt.

53.     Ocwen did not respond to Lewis' inquiries and disputes, as outlined in the QWR, within ninety (90) days.

54.     Ocwen never addressed the discrepancies which were repeatedly brought to its' attention.

## **PATTERN OR PRACTICE OF VIOLATIONS BY DEFENDANT**

55.     Ocwen's failure to timely acknowledge receipt, investigate or respond to QWR is typical for Ocwen, which has a nationwide pattern and practice of ignoring Qualified Written Requests, and, failing to address discrepancies even when brought to their attention multiple times.[3]

---

[3] In December 2013, Ocwen settled with the Consumer Financial Protection Bureau and 49 states and the District of Columbia for 2.1 **billion** [emphasis added] dollars to settle allegations of Ocwen's improper handling of mortgages. http://www.consumerfinance.gov/blog/explainer-what-the-multi-billion-dollar-ocwen-enforcement-action-means-for-you.

## CREDIT REPORTING

56.     Defendant has reported negative and inaccurate information to Plaintiff's credit reports, these discrepancies which are the fault of Defendant.

57.     Plaintiff has been denied credit, had to pay a higher interest rate, and suffered humiliation due to the negative reports by Defendant to his credit reports.[4]

## COUNT 1:  VIOLATIONS OF THE FEDERAL REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA"), 12 U.S.C. §§ 2601, et. seq.

58.     Plaintiff reiterates and incorporates all previous paragraphs as if fully stated herein.

59.     Defendant did not acknowledge receipt of the QWR from Plaintiff within twenty (20) days of receipt, in violation of *12 U.S.C. 2605(c)(1)(A),(e)(2).*

60.     Defendant did not respond to the disputes and inquiries outlined in the QWR within sixty (60) days of receipt, in violation of *12 U.S.C. 2605(c)(1)(A),(e)(2).*

---

In Feb 2014, Benjamin Lawsky, superintendent of New York's Department of Financial Services, restricted the proceedings of the cash-deal worth $2.7 billion entered into by Wells Fargo & Co. and Ocwen in Jan 2014 as it doubted Ocwen's capability to service loans.

On May 19, 2014, a homeowner filed a putative class action lawsuit against Ocwen Loan Servicing, LLC in Pennsylvania federal court, alleging that Ocwen consistently failed to file mortgage satisfactions in a timely manner, in violation of the federal Mortgage Satisfaction Act and the U.S. Real Estate Settlement Procedures Act.

An embattled mortgage servicer was allegedly forcing homeowners to sign a gag order barring them from bad-mouthing the company before completing a reworked home loan.  http://nypost.com/2014/05/21/ocwen-forced-homeowners-to-stay-quiet-reports/

Ocwen sets aside 100 million for legal troubles. http://nypost.com/2014/10/30/ocwen-sets-aside-100m-to-end-legal-troubles/

[4]A 1996 amendment to the FCRA created compliance obligations for furnishers under §623 of the FCRA. According to a report of the Senate Committee on Banking, Housing and Urban Affairs, "[t]he driving force behind the changes was the significant amount of inaccurate information that was being reported by consumer reporting agencies and the difficulties that consumers faced getting such errors corrected. In fact, during the period leading up to the amendments, the FTC [Federal Trade Commission] consistently indicated that it received more complaints about consumer report errors than any other item." Section 623, among other things, generally provides that a furnisher must not furnish inaccurate consumer information to a CRA, and that furnishers must investigate a consumer's dispute of the completeness or accuracy of information after the furnisher receives notice from a CRA. See, *Consumer Credit Reporting Reform Act of 1996 Pub. L. 104-208, Div. A, Tit. II, Subtit. D, Ch. 1*

61.     Defendant did not provide an annual escrow statement every year, in violation of *12 U.S.C. §§ 2609(c)(2)(a), 2609(c)(B).*

62.     Defendant did not notify Plaintiff in writing of each assignment, sale, or transfer of the servicing of the loan to any other person or entity, in violation of *12 U.S.C. 2605(b)(1).*

63.     Defendant did not notify the borrower in writing of each assignment, sale, or transfer of the servicing of the loan to any other person no less than fifteen days before the effective date of such transfer, in violation of *12 U.S.C. 2605 (b)(2)(A).*

64.     RESPA allows for damages of $1000.00 per violation in cases where Defendant shows a pattern or practice of noncompliance with the requirements of RESPA. *12 U.S.C. 2605(f)(1)(B).*

65.     Defendant charged multiple fees and charges to Plaintiff's account and accepted payment for services not actually rendered, in violation of *12 U.S.C. 2607(b).*

66.     Defendant charged excessive and duplicative escrow fees to the account, in violation of *12 U.S.C. §§ 2609(a)(1). 2609(a)(2).*

67.     Defendant reported Plaintiff's mortgage as delinquent during the sixty (60) day period following its receipt of Plaintiff's QWR, in violation of *12 U.S.C. §2605(e)(3)*, which negatively affected Plaintiff's credit rating and credit worthiness.

68.     Plaintiff suffered actual damages as a result of Defendant's violations of this statute.

69.     Plaintiff is entitled to recover actual damages and attorney's fees and costs.

## COUNT 2:  VIOLATIONS OF FEDERAL FAIR DEBT COLLECTIONS PRACTICES ACT ("FDCPA"), 15 U.S.C. §§ 1692 ET. SEQ.

70.     Plaintiff reiterates and incorporates all previous paragraphs as if fully stated herein.

71.     Plaintiff is a consumer as defined by *15 U.S.C. 1692a(3).*

72.     Defendant is a "debt collector" as defined by *15 U.S.C. 1692a(6)*, and attempting to collect a "debt" from the Plaintiff, in so far as "debt" is defined pursuant to *15 U.S.C. 1692a(5)*.

73.     The FDCPA is a strict liability statute and debt collectors are liable for any violation of the Act.[5]

74.     RESPA, AFDCPA, and FCRA violations committed by the Defendant are per se violations of *15 U.S.C. 1692f*; which states, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

75.     Plaintiff suffered actual damages as a result of Defendant's violations of the FDCPA.[6]

76.     Plaintiff is entitled to recover statutory damages under *15 U.S.C. 1692k(a)2(A)*, actual damages under *15 U.S.C.k(a)1*, and reasonable attorney's fees under *15 U.S.C.k(a)3*.

## COUNT 3: VIOLATIONS OF THE ARKANSAS FAIR DEBT COLLECTION PRACTICES ACT ("AFDCPA"), A.C.A. §§ 17-24-501 et. seq.

77.     Plaintiff reiterates and incorporates all previous paragraphs as if fully stated herein.

78.     Plaintiff is a "consumer," in so far as "consumer" is defined by *A.C.A. 17-24-502(2)*.

---

[5]The FDCPA is a "[r]emedial, strict liability statute which was intended to be applied in a liberal manner." *Picht. v. Hawks,* 77 F. Supp. 2d 1041, 1043 (D. Minn. 1999) aff'd, 236 F.3d 446 (8th Cir.2001). "The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors,' and debt collectors are liable for failure to comply with 'any provision' of the Act." *Richmond v. Higgins,* 435 F.3d 825, 828 (8th Cir. 2006).

"The question of whether a person is a "debt collector" is dependent on the person's general activities rather than on the specific allegations in the case. *Kaltenbach v. Richards,* 464 F.3d 524, 529 (5th Cir. 2006) (stating, "[A] party's general. not specific. debt collection activities are determinative of whether they meet the statutory definition of a debt collector . . . Whether a debt collector's specific action qualifies as the collection of a debt . . . is a separate inquiry from whether the party meets the general statutory definition of a debt collector."). This position appears consistent with the statutory definition of "debt collector," which is "one who *regularly* collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." *15 U.S.C. § 1692a(6)* (emphasis added). *Hutsler, et al., v. Shapiro & Kreisman, LLC* 4:13-cv-2159-SPM (E.D. MO. June 2, 2014).

[6] Consumer does not need to meet the elements of the state law tort of intentional infliction of emotional distress *Riley v. Giguiere,* 631 F. Supp. 2d 1295, 1315 (E.D. Cal. 2009*); Davis v. Creditors Interchange Receivable Mgmt., LLC,* 585 F. Supp. 2d 968, 971-77 (N.D. Ohio Nov. 12, 2008); *Panahiasl v. Gurney,* No. 04- 04479 JF, 2007 WL 738642, at *2 (N.D. Cal. Mar. 8, 2007),

79.     Defendant is a "debt collector," in so far as "debt collector" is defined by *A.C.A. 17-24-502(5)(A)*, attempting to collect a "debt," in so far as "debt" is defined by *A.C.A. 17-24-502(4)*

80.     *A.C.A. 17-24-505(a)* states, "A debt collector may not engage in a conduct the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt."

81.     *A.C.A. 17-24-507(a)* states, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect a debt."

82.     *A.C.A. 17-24-512(a)(1)* states, "A debt collector who fails to comply with this subchapter with respect to a person is liable to the person in an amount equal to the sum of an actual damage sustained by the person as a result of the failure."

83.     *A.C.A. 17-24-512(2)(A)* states, "A debt collector who fails to comply with this subchapter with respect to a person is liable to the person for statutory damages of up to $1,000.00."

84.     *A.C.A. 17-24-512(2)(A)* states, "A debt collector who fails to comply with this subchapter with respect to a person is liable for the costs of the action, together with a reasonable attorney's fee."

85.     The RESPA, FCRA and FDCPA violations committed by the Defendant are per se violations of *A.C.A. 17-24-505(a)* & *A.C.A. 17-24-507(a)*.

86.     Plaintiff suffered actual damages for violations of the AFDCPA.

87.     Plaintiff is entitled to recover statutory and actual damages, along with his costs and reasonable attorney fees.

## COUNT 4: VIOLATIONS OF FEDERAL FAIR CREDIT REPORTING ACT ("FCRA"), 15 U.S.C. §§ 1681 et. seq.

88.     Plaintiff reiterates and incorporates all previous paragraphs as if fully stated herein.

89.     Defendant's negative reports to the credit agencies were in error, thereby making the information reported "inaccurate" and which negatively affected Plaintiff's credit score and credit worthiness; in violation of *15 U.S.C. §1681s-2*.

90.     Plaintiff suffered actual damages as a result of Defendant's violations of the FCRA.

91.     Plaintiff is entitled to punitive damages pursuant to *15 U.S.C. 1691n*.

92.     Plaintiff is entitled to recover actual damages, costs and attorney's fees; pursuant to *15 U.S.C. §§ 1681o, 1681o(2)*.

## COUNT 5: VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT ("ADTPA") A.C.A. §§ 4-88-101 et. seq.

93.     Plaintiff reiterates and incorporates all previous paragraphs as if fully stated herein.

94.     Violations of the FDCPA, AFDCPA and RESPA are per se violations of the ADTPA; specifically, *A.C.A. 4-88-107(a)(10)*, which states that deceptive and unconscionable trade practices made unlawful and prohibited, include engaging in any unconscionable, false, or deceptive act or practice in business, commerce, or trade.

95.     Plaintiff suffered actual damages as a result of Defendant violations of the ADTPA.

96.     A private right of action and attorney fees are available under the ADTPA, specifically, *A.C.A. 4-75-211*; and as such Plaintiff is entitled to recover his actual damages, costs, and attorney's fees.

## COUNT 6: BREACH OF CONTRACT OR IN THE ALTERNATIVE UNJUST ENRICHMENT

97.     Plaintiff reiterates and incorporates all previous paragraphs as if fully stated herein.

98.     A valid written contract was formed between Plaintiff and Defendant.

99.     The Defendant materially breached the contract.

100.    The Defendant's performance under the contract was not excused.

101.    The Plaintiff has suffered damages due to the Defendant's material breach of the contract.

102.    The Defendant has been unjustly enriched due to their material breach of the written contract between the Plaintiff and Defendant.

103.    The Plaintiff suffered damages with over payments to their escrow and lack of credits.

## DAMAGES AND PRAYER FOR RELIEF

### RESPA DAMAGES

104.    Plaintiff reiterates and incorporates all previous paragraphs as if fully stated herein.

105.    Plaintiff requests Defendant correct their accounting of his escrow account.  Plaintiff is entitled to the actual damages he suffered as calculated by the difference between what was earmarked for escrow funds and what Defendant actually deposited as escrow funds for the years Defendant serviced the loan.

106.    Plaintiff suffered actual damages in an amount to be determined through discovery and/or at trial.

107.    Plaintiff request $1000.00 in statutory damages, for each violation of RESPA by the Defendant; pursuant to *12 U.S.C. 2605(f)(1)(B)*.

108.    Plaintiff request his attorney's fees and costs pursuant to *12 U.S.C. §2605(f)(3)*.

109.    Plaintiff request treble damages, costs and attorney's fees pursuant to *12 U.S.C. §2607(d)(1)-(6)*.

### FDCPA DAMAGES

110.    Plaintiff reiterates and incorporates all previous paragraphs as if fully stated herein.

111.    Plaintiff request statutory damages in the amount of $1000.00.

112.    Plaintiff request actual damages of emotional distress for the money Plaintiff was overcharged and the money in escrow that was not applied correctly or was illegally applied or converted, in an amount determined at trial.

113.    Plaintiff prays for his attorney fees and costs to bring this action.

## FCRA DAMAGES

114.    Plaintiff reiterates and incorporates all previous paragraphs as if fully stated herein.

115.    Plaintiff request actual damages proven at trial, statutory damages for each violation proven at trial, punitive damages in an amount determined at trial, treble damages, costs, and attorney fees.

## ADTPA DAMAGES

116.    Plaintiff reiterates and incorporates all previous paragraphs as if fully stated herein.

117.    Plaintiff request actual damages proven at trial, costs, and attorney fees.

## DAMAGES FOR BREACH OF CONTRACT, FRAUD, CONSTRUCTIVE FRAUD, UNJUST ENRICHMENT

118.    Plaintiff reiterates and incorporates all previous paragraphs as if fully stated herein.

119.    Plaintiff request an amount proven at trial, and for attorney fees for breach of contract, pursuant to *A.C.A. 16-22-308.*

## DECLARATORY JUDGMENT

120.    Plaintiff reiterates and incorporates all previous paragraphs as if fully stated herein.

121.    Plaintiff prays for declaratory judgment, finding that Ocwen's illegal conduct against the Plaintiff is wonton and willful.

## DEMAND FOR TRIAL BY JURY

122.    Plaintiffs respectfully request a trial by jury.

**WHEREFORE**, Plaintiff, Jimmy Lewis, prays this court grant his for Complaint and prays for judgment against the Defendant, for violations of RESPA, FDCPA, AFDCPA, FCRA ADTPA, breach of contract and unjust enrichment, in an amount proven at trial; along with his court costs, attorney's fees, and for all other relief to which Plaintiff has shown himself entitled.

Respectfully Submitted,

Victoria Leigh (2011257)
 P.O. Box 21514
 Little Rock, AR 72221
 (501) 227-7627
 (501) 227-7628 Fax
 v@leigh-law.com



OCWEN

January 23, 2014

Jimmy L. Lewis

116 Blazer Road
Junction City, AR 71749

Loan Number:        7092479422
Property Address:   116 Blazer Road, Junction City, AR 71749
Analysis Date:      01/22/14

Dear Jimmy L. Lewis :

## ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT
## ACCOUNT HISTORY

This is a statement of actual and scheduled activity in your escrow account from April 2012 through February 2014. Any scheduled activity is denoted by an "s".

Your monthly mortgage payment for the past year was $1,330.34 of which $1,008.88 was for principal and interest and $321.46 went into your escrow account.

| Actual Month | Projected Payments To Escrow | Actual Payments To Escrow | Projected Payments From Escrow | Actual Payments From Escrow | Description | Projected Ending Balance | Actual Ending Balance |
|---|---|---|---|---|---|---|---|
| Apr-12 | | $191.12 | | $680.23-s | County Tax (PARCEL # 000001985303 25) | | $-3,278.36 |
| May-12 | | | | | | | |
| Jun-12 | | $231.32 | | | | | $-3,047.04 |
| Jul-12 | | $231.32 | | | | | $-2,815.72 |
| | | $231.32 | | | | | $-2,584.40 |
| Aug-12 | | $231.32 | | | | | $-2,353.08 |
| Sep-12 | | | | | | | |
| Oct-12 | | $231.32 | | | | | $-2,121.76 |
| Nov-12 | | | | | | | |
| Dec-12 | | $231.32 | | | | | $-1,890.44 |


EXHIBIT A



OCWEN

WWW.OCWEN.COM

| Actual Month | Projected Payments To Escrow | Actual Payments To Escrow | Projected Payments From Escrow | Actual Payments From Escrow | Description | Projected Ending Balance | Actual Ending Balance |
|---|---|---|---|---|---|---|---|
| | | $231.32 | | | | | $-1,659.12 |
| Jan-13 | | | | $1,429.00 | Lender placed Hazard Insurance | | $-3,088.12 |
| | | | | | (POLICY # ALR07235558 912) | | |
| Feb-13 | | $231.32 | | | | | $-2,856.80 |
| *Mar-13 | $321.46 | $231.32 | | | | $1,035.92 | $-2,625.48 |
| *Apr-13 | $321.46 | $231.32 | | $680.23-s | County Tax (PARCEL # 000001985303 25) | $1,357.38 | $-3,074.39 |
| May-13 | $321.46 | $321.46 | | | | $1,678.84 | $-2,752.93 |
| Jun-13 | $321.46 | $321.46 | | | | $2,000.30 | $-2,431.47 |
| Jul-13 | $321.46 | $321.46 | | | | $2,321.76 | $-2,110.01 |
| Aug-13 | $321.46 | $321.46 | | | | $2,643.22 | $-1,788.55 |
| Sep-13 | $321.46 | $321.46 | | | | $2,964.68 | $-1,467.09 |
| *Oct-13 | $321.46 | $321.46 | $1,429.00 | | FORCED Hazard Insurance | $1,857.14 | $-1,145.63 |
| | | | | | (POLICY # ALR07235558 912) | | |
| * | | $321.46 | | | | | $-824.17 |
| * | | $321.46 | | | | | $-502.71 |
| *Nov-13 | $321.46 | $321.46 | | $120.00 | Lender placed Hazard Insurance | $2,178.60 | $-301.25 |
| | | | | | (POLICY # MLR07236479 423) | | |
| Dec-13 | $321.46 | $321.46 | | | | $2,500.06 | $20.21 |
| Jan-14 | $321.46 | $321.46 | | | | $2,821.52 | $341.67 |
| Feb-14 | $321.46 | $321.46-s | | | | $3,142.98 | $663.13 |
| TOTALS | $3,857.52 | $6,361.84 | $1,429.00 | $2,909.46 | | | |

An asterisk (*) indicates a difference from a previous estimate either in the date or the amount.
Last year, we anticipated that payments from your account would be made during this period equaling $1,429.00. Under Federal law, your lowest monthly balance should not have exceeded $238.17 or 1/6 of anticipated payments from the account.
Based on the above information, our records indicate that your property taxes were paid to Lender placed Hazard Insurance in the amount of $1,549.00. Please carefully review the disbursement information listed under the Projections For Coming Year on the other side of this document. If the information is incorrect, please forward a copy of the declaration page for

EXHIBIT A-2

COLLECTOR DOROTHY RALEY, COLLECTOR D.C.        ROE

AR71749        JUNCTION CITY

116 BLAZER RD
LEWIS, JIMMY LEE

TO WHOM ASSESSED

S77736

AMOUNT PAID 748.34   HOW PAID CHECK CASH M.O. XX   DATE 10/25/13   RECEIPT NO. 57736

AMOUNT PAID 748.34   TOTAL

COLLECTION COSTS

PENALTY 68.11

TMBR .60   SUB TOTAL 679.63   CREDIT 350.00   TAX TOTAL 1029.63   25870   582   16181685   1

INSTR #97478I#05-6547
FRL SW SW 5.32 AC
LEWIS, JIMMY LEE
0000-19853-0325
REAL ESTATE

PARCEL NO.   LEGAL DESCRIPTION   AREA ACRES WIDTH   SPECIAL IMP DISTRICT   VALUATION   TAX   TOTAL

Taxes for the year 2012
RECEIPT OF TAXES PAID

## RECEIPT OF TAXES PAID

REDEEM REAL ESTATE 2011

XXXXXXXXXXXXXXXXXXXX   UNION COUNTY OF ARKANSAS

Taxes for the year

| PARCEL NO.   LEGAL DESCRIPTION | 1853 | 10853 | 15853 | AREA ACRES WIDTH | SPECIAL IMP DISTRICT | VALUATION | TAX | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 00000-19853-0325 | 16 | 18 | 1685 | 5 | 32 | 17076 | TAX | 679.63 |
| FRL SW SW 5.32 AC | | | | | | | PEN | 67.96 |
| 1   426.90  42.69   2    52.94   5.30 | | | | | | | TMBR | .60 |
| 3    51.23   5.12   6   133.19  13.32 | | | | | | ***IMP*** | PEN | .15 |
| 5   6    6.83  .68 | | | | | TAX | PEN | IMP | |
| 7   8 | | | | | | | PEN | |
| 9   10 | | | | | | | INT | 67.95 |
| 11   8.54   .85 | | | | | | | | |

| | PENALTY | 1.50 |
|---|---|---|
| | COLLECTION COSTS | 2.50 |
| | TOTAL AMOUNT PAID | 820.29 |

THE HOLDER OF THIS RECEIPT IS REQUESTED TO EXAMINE IT THOROUGHLY AND SHOULD THERE BE A MISTAKE IN IT, RETURN IT IMMEDIATELY FOR CORRECTION OR THIS OFFICE IS NOT RESPONSIBLE.

IF PAYMENT IS MADE BY CHECK AND SAME IS NOT HONORED UPON PRESENTATION THIS RECEIPT IS NULL AND VOID

TO WHOM ASSESSED

JIMMY LEE LEWIS

LEWIS, JIMMY LEE
116 BLAZER ROAD

JUNCTION CITY                AR 71749

DOROTHY RALEY, COLLECTOR        ROE
ECTOR                     D.C.

| RECEIPT NO. | DATE | HOW PAID CHECK CASH M.O. | AMOUNT PAID |
|---|---|---|---|
| 64395 | 10/25/13 | XX | 820.29 |

TOTAL AMOUNT PAID        820.29
CASH REFUND AMOUNT          .71

CASH:        821.00

EXHIBIT B

--------------------------------------------------



**O C W E N**

**PLEASE INCLUDE THE BELOW COUPON WITH ANY UPDATES**

**Please update my escrow records with the following information:**

Loan Number- 7092479422

Jimmy L Lewis
116 Blazer Road
Junction City, AR 71749

New Insurance Company: *all state*

New Insurance Agent: *Ginger Tela*

New Policy Number: *995 088 342*

OCWEN Loan Servicing, LLC
Attn: Escrow Department
P.O. Box 24737
West Palm Beach, FL 33416-4737

Additional Information

*I pay and have always paid Taxes on my Mortgage, as of November 7th, 2013. I have my Insurance with all state.*

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

*NMLS # 1852*

UNION COUNTY OF ARKANSA

**RECEIPT OF TAXES PAID**

Taxes for the year 2013

| PARCEL NO. | LEGAL DESCRIPTION | SEC. CT LOT | TWP BLOCK | RANGE | SCHOOL DIST. | AREA ACRES | 100TH | SPECIAL IMP. DISTRICT | VALUATION | TAX | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| REAL ESTATE 00000-19853-0325 LEWIS, JIMMY LEE FRL SW SW 5.32 AC INSTR #974781#05-6547 | | 16 | 18 16 | 35 | | 5 | 32 | | 25310 | TAX CREDIT SUB TOTAL TMBR | 1007.34 350.00 657.34 .20 |

| | | |
|---|---|---|
| THE HOLDER OF THIS RECEIPT IS REQUESTED TO EXAMINE IT THOROUGHLY AND SHOULD THERE BE A MISTAKE IN IT. RETURN IT IMMEDIATELY FOR CORRECTION OR THIS OFFICE IS NOT RESPONSIBLE. | IF PAYMENT IS MADE BY CHECK AND SAME IS NOT HONORED UPON PRESENTATION THIS RECEIPT IS NULL AND VOID | PENALTY |
| | | COLLECTION COSTS |

151

| | | |
|---|---|---|
| | **SUBTOTAL** | 657.54 |

XXXXXXXXXXXXX

LEWIS, JIMMY LEE
116 BLAZER RD
JUNCTION CITY          AR71749

| RECEIPT NO. | DATE | HOW PAID CHECK | CASH | M.O | AMOUNT PAID |
|---|---|---|---|---|---|
| 151 | 3/17/14 | | XX | | 657.54 |

EXHIBIT C

COLLECTOR DOROTHY RALEY, COLLECTOR   D.C.      CR



WWW.OCWEN.COM

your current insurance policy and/or the most recent tax bill to the below address. You may also fax this information to Attn: Escrow Department at (561) 682-7875.

The $680.23 (x2) of County TAX was paid by myself. I have receipts, I have always paid them. So, that can be deducted.

I have home owners Insurance with Allstate, Since November 7th, 2013. With that being said, I want my Escrow account to be closed. I will be handling my Taxes + Insurance from this day forward. Ocwen Owes me money that is in my Escrow Account

Thank you!

EXHIBIT D

```
    **********************
    *** FAX TX REPORT ***
    **********************

            TRANSMISSION OK

    JOB NO.                 0299
    DESTINATION ADDRESS     15616827875
    SUBADDRESS
    DESTINATION ID
    ST. TIME                03/18 10:41
    TX/RX TIME              01'55
    PGS.                    6
    RESULT                  OK
```

OCWen Escrow Department

From Jimmy Lewis
        Loan # 709 247 9422

I Am requesting my Escrow account be
closed. I have included receipts of Taxes
Paid for the previous (3) three years.

Thank You

EXHIBIT D.

Jimmy Lewis

Account #7092479422

Dear Ocwen,

A few months ago, I requested that my Escrow account be closed and the balance refunded to me. The escrow was closed and I did receive a check for what Ocwen showed as my balance. The problem that still exists is, money was taken out of my escrow account by Ocwen (I am sending those documents with this letter) for real estate tax in April 2012 ($680.23) and April 2013 ($680.23). I have the receipts for the past years where I have paid those taxes, not Ocwen. $1,36046 was taken from my escrow account by you (Ocwen), but was not paid toward my taxes. So, this money is owed to me.

I have called and talked to  different agents at your company the past 5 months and they did not understand, or disagreed with me about this matter. Money was taken out of the escrow account, but was not used for what the statement said it was to be used for. The last two agents that I talked to this month told me to fax the information to you, the research department. You will find my receipts of paid taxes and the statement that was sent to me by your company, (Ocwen).

Thank You

Jimmy Lewis


EXHIBIT E